All rise. This court now resumes its session. I'm Judge Gould. Again, I'm very happy to be sitting with Judge Clifton and Judge Miller. And we particularly appreciate the advocacy that we will today receive from counsel for the parties. We have two somewhat related environmental cases involving intervention, and we've set them separately. But if the appellant wants to comment on issues that are common to just let us know while you're addressing them, that might help us. But we are going to have an argument in both these cases. I don't think I have a lot of time. So for the appellant at Western Watershed, we have Ms. Stetson. And then for the appellees, we have Mr. Mussel. And again, this case is set for 15 minutes per side. It is an important case for us and for the parties. So if either of you need a little extra time, just ask for it, and I'll try to give it to you. Without further ado, we'll proceed with the argument by appellant. And counsel, could you clarify how you pronounce Anschutz or Anschutz? Certainly, Your Honor. Good afternoon. My name is Kate Stetson, and I represent the appellant Anschutz Exploration in both this case and the subsequent case, as you mentioned. This is the first of the two appeals that you'll hear today arising from the same bottom line conclusion, but two different decisions, although very similarly written by two different district courts. The first appeal, this one, arises from Idaho, and it actually involves two different orders denying limited intervention. After the district court in Idaho issued a summary judgment vacating the leases of non-parties to a case, Anschutz sought intervention for purposes of appeal and intervention for purposes of participating in two subsequent phases of the litigation involving different lease sales and different leases. The district court in two separate orders denied both of those motions for intervention. So I'll start with what's not in dispute with respect to both of those orders. It is not in dispute under Rule 24 that Anschutz has a significant and protectable interest in the leases at issue. Of course, it holds them. It's also not in dispute that this summary judgment order coming out of Idaho, which canceled those leases in the absence of Anschutz's participation as a party, impaired Anschutz's interest, not just threatened to impair, but did impair. The two Rule 24 factors that the district court decided on are the remaining two, timeliness and adequacy of representation. So starting with timeliness, with respect to the motion. Before you get into the merits of that, could I ask you just a practical question? Setting aside for a moment the ongoing litigation in the district court and just focusing on intervention for purposes of appeal, if we agree with you that you should be allowed to intervene for purposes of appeal, what does that mean practically? Because as I understand it, the appeal is fairly well in progress already. So what would happen? I think what would happen, Judge Miller, that there are a number of different possibilities. You're correct. The appeal, the underlying appeal, was already in progress. It was argued May 6th before a different panel. There are a number of possibilities that could come out of that appeal, just judging from the arguments themselves. What we would submit is that if this court concludes that Anschutz had a right to intervene and participate in that appeal, that that appeal should be stayed. That Anschutz should be permitted to submit further briefing on the remedies issue with which Anschutz is most concerned. And to the extent limited further argument is necessary, that that argument be held. I think that's probably the most efficient way to reconcile the two cases, given that the underlying appeal has already progressed to the point it has. That brings up another practical question, which is, as I understand it, your explanation of why you weren't adequately represented by the alliance is that you have this argument you want to make, which is that you had to be made a party in the district court before your leases could be canceled. If we agree with you that you should be able to intervene, and then you go to the merits panel and they reopen things and they agree with you on that, you then go back to the district court, and now you are a party, so that argument kind of evaporates. And wouldn't the district court then do exactly the same thing it did before? Because you would no longer be able to raise the objection that it violated due process to cancel the leases without you, because you'd be there. So what would happen then? Yes, I don't think this is the kind of logical conundrum that the plaintiffs make it out to be, Judge Miller. Our point is, with respect to the remedy, that the district court was not in a position to issue that remedy without our participation as a party. That's both the Rule 19 problem, which this court has identified multiple times, and the due process problem that we identified. So, if we go back into a district court proceeding where the remedy is in play, and we are a participating defendant, and the district court nevertheless concludes, despite all of the arguments under Allied Signal and the like, that canceling the leases is appropriate, then, just as in the cases that the plaintiffs are fond of citing, where the defendants actually were named defendants in the underlying cases, and I'm talking about Bob Marshall Alliance, High Country, and the like, then those leases would be vacated. But that's several steps ahead. Our point is that, with respect to the remedy itself, Western Energy Alliance was not able to adequately represent us. And if I could, I can jump right to the adequate remedy issue, if that's the issue you'd like to focus on, Judge Miller. With respect to that issue, I want to set up the timing, though, a little bit, because it's important. This court has made clear many times, including in Connor v. Burford, that a party can be adequately represented during the course of a litigation until it's not adequately represented. In fact, there's a line from Connor v. Burford that says, with respect to the underlying substantive issues, the interveners there were adequately represented by the government. And that was the case in this NEPA action. This is, of course, in many respects, right up until the court's summary judgment order, a run-of-the-mill NEPA case. It was a case challenging hundreds of leases, involving the process that the Bureau of Land Management undertook in order to issue or sell those leases. And in that kind of administrative process case, it's almost always the case that the government and perhaps an industry group, as was the case here, is going to be best positioned and completely adequately positioned to defend that administrative process. In fact, if you look at the Denae Citizens case that we cite, as well as the Kettle Range case that we cite, the concept behind those NEPA cases is that that is a public rights case. And in a public rights case, someone who has kind of a passing or indirect interest in what that case is, isn't entitled to intervene. But as this court made clear just in 2019 in Denae Citizens, that public rights case changes the minute the remedy like this is entered. Because at that point, the public rights case changes into a case that destroys private rights. That's the phrase from Denae Citizens. At what point did your client become aware of the potential for what you've now identified as the remedy, the cancellation of the lease? I think the notice issue is somewhat separate from the adequacy issue that we're talking about. But I'm asking about the notice issue. I'll tell you my concern here, is that your client certainly knew about the lawsuit, presumably knew about Western's intent and actuality of intervention, likely knew about the potential remedy, and yet did not seek to intervene at that time, and in that fashion, tried to reserve the argument that it couldn't have used if it had in fact intervened, the argument that you referred to, that if you're not a party, they can't cancel our lease. But in fact, if your client made a conscious decision to hang back, it sounds like your client wants to eat its cake and have it too. And that's not what the law provides for. So I ask the question, at what point did your client become aware that cancellation of the lease was on the table? Your Honor, I don't think there's anything in the Idaho record that indicates exactly when Anschutz became aware that cancellation of leases was on the table. But let me say two things about that. The first is, I think it is not the law in this circuit or in any other circuit, under Rule 19 or any other precedent or any other rule, that it is incumbent on a non-party to ensure that all parties are joined in a case. That responsibility, in the first instance, falls to the plaintiffs, and in the second instance, falls to the district court. So I would resist the suggestion that there was any reason for that. You can resist the suggestion, but timeliness is surely an issue. And timeliness can be driven by what somebody is fairly made aware of. And so I pose the question, which you're now telling me the record doesn't answer, at least for the Idaho case. It's hard not to draw the inference that your client, having insisted that it spent so much money on this project, would have paid attention and would likely have been aware of at least the possibility. And so I'm not clear why your client shouldn't be held accountable for the decision made at that time to hang back and not seek to intervene. Two points, Your Honor. The first is, with respect to timeliness, there are no cases, and I'm comfortable saying no cases, where a party has sought leave to intervene for purposes of an appeal, and done so within the time for filing a notice of appeal, and been found untimely. And that, with respect to the appeal issue, is what we're talking about here. The second argument relates to the public rights argument that I made earlier, which is, what we did know is that in this circuit, dating back to the early 1970s, there is a line of cases, starting with Lomo Yactua, which we cite in our brief, going all the way through Kettle Range and Conner v. Burford and other cases that stand for two principles. Number one is, you cannot cancel a lease without the participation of that leaseholder as a party. Number two, if a lease is canceled without that leaseholder's participation, as in Conner v. Burford, that remedy is reformed in order to protect the interests of the non-party. So I don't think it would be, frankly, fair or appropriate to suggest that Anschutz somehow hung back and waited until this radical remedy that was completely unexpected, after 40 or 50 years of Ninth Circuit jurisprudence saying, you may not do this, was implemented. We took quick action. I'm sorry to interrupt. It was the remedy. It may be radical and unprecedented, but it was the remedy sought in the complaint, wasn't it? It is a remedy sought by many NEPA plaintiffs and many complaints involving leases like this. And what I would point out, too, just in terms of gamesmanship and tactics, is in the cases that the plaintiffs cite where the leaseholder is a defendant, those cases have gone against a particular permit, an extension of a permit, or so forth. These plaintiffs chose to structure this complaint to challenge hundreds of leases at the same time. Now, that puts putative intervener defendants like Anschutz in a jurisdictional quandary, of course, because there's no personal jurisdiction over Anschutz in Idaho. So, if Anschutz sought leave to intervene, and that's assuming the plaintiff doesn't have the job of doing that, which, of course, under Rule 19 it does. It's assuming the district court doesn't do its job, which under Rule 19 it should. That leaves the companies like Anschutz with the decision of whether to forfeit a jurisdictional challenge in order to protect interests that are among the many alternatives that are usually sought by NEPA plaintiffs in cases like this. The other thing I'd mention too, just to get back to the public rights concept, is if Anschutz and the hundreds of other leaseholders had sought to intervene at this early stage, I would expect, and again this is speculation because of what has now happened at the remedy side, but I would expect what you would hear from the plaintiffs is, no, no, there's no need to intervene, this is a public rights case. And because this is a public rights case, the government and the alliance are perfectly capable of handling the defense to the administrative process that were challenging. And that's why I'm homing in on the point that it wasn't until this remedy was issued, this remedy that was so severe that really has not been replicated with respect to an absent party in a lease case, and where we have timely moved to participate in appeal, that is, I think, what makes this case quite distinct from the cases the plaintiffs are fond of citing. I am cognizant that my time is running down to two minutes. I'm happy to continue answering questions, but I just wanted to mention that I'd like to reserve a couple minutes for rebuttal, but I'm very happy to answer. Counsel, Judge, if I could interject. I'll take up a little more of your time, but I will give you two minutes for rebuttal. Thank you. It goes over the original. So my question is this. At this point, are you seeking to intervene solely for purposes of appeal, or are you also trying to intervene so that you can argue to the district court to reconsider its merits ruling or remedy? It is the former Judge Gould with one caveat. We are seeking limited intervention in two respects. One of them is to appeal, and one of them is to participate in the future proceedings that pertain to other leases, other lease sales that were not covered by what the parties are calling the Phase I proceedings. So in no respect would I say we're asking to reconsider, re-litigate, go back and revisit the Phase I ruling below, and that's often the case when parties are found to have come into court untimely. It's because the egg has already been scrambled. The case is still proceeding. There's no appeal that's yet been taken, and you have a late-arriving party asking to go back and re-scramble the egg. That's not what we're seeking to do here. We filed a motion to intervene for appellate purposes within the time for filing an appeal notice. That makes it timely. Because of the remedy the court issued, the alliance is not in a position to represent us. There is no case, and again I will say no case, where a court has found that an industry group adequately protects the interests of an absent party when those interests are property rights that have been called into or essentially cancelled by what the district court did. Is there anything that would prevent the amicus party or your client seeking to appear in an amicus capacity, for that matter potentially seeking to intervene in the appeal separately from the underlying action, or prevent the party that is there, Western WEC, from making the argument that, hey, we're here, but the party that needs to be here isn't here, and you can't affect that party's rights without that party being present. Was that argument made to our colleagues last month? It was not, Judge Clifton, and that in a way is the point. What the alliance argued below in this case was that the court shouldn't award the relief in the first place, but if it did rule for the plaintiffs, it shouldn't vacate because then the government and the states would have to give back money to the lessees. It never made the points that we're making now, which are you can't order this remedy if these leaseholders are not at the table, and it's the plaintiff's responsibility in the first instance to make sure they're at the table, and failing that, the court's responsibility. So why wouldn't that argument have been made? I mean, I'm taking you over time, but this is on me, not you. Is there any reason why WEC couldn't be asked to make that argument and would in fact want to make that argument because it doesn't want to resist the wishes of its members? Well, I think that puts the alliance well beyond its charge in a way, and this is why I think the difference between what the alliance is able to do and what the private property holder is able to do is so important. The alliance represents the interests of hundreds of members. If you think about this as... But on this point, all the members have exactly the same interests. They don't want their leases canceled. So why wouldn't the alliance want to make the argument, you can't do it without them being present? Perhaps because the alliance has several hundred members who didn't get leases in the lease sale and might be very interested in the vacator of the leases. There is an analogy here to the representational standing point that I wanted to make if I could. A group like the alliance is very well situated to represent the interests of its members as long as the remedy doesn't have to pertain to any particular individual member. That's the standard hunt standard. If you take that concept and you think about it in terms of what we're talking about here, the alliance was perfectly well positioned to adequately represent the interests of all of its members in this NEPA challenge, this commonplace NEPA challenge that involves a challenge to the administrative process right up until the relief became individualized as to Anschutz and the other leaseholders. That's the point at which Anschutz's interests came sharply into relief. It's the point where Anschutz moved quickly to intervene. There's really no justification for the district court's timeliness rulings and for all of the reasons that we've expounded on. There's no justification for finding that the alliance is an adequate representative of a party's personal and individualized property interests. That is the point where the adequate representation stops and the party is obligated to do what the plaintiffs and the court should have done before, which is to intervene in order to protect its property interests. If there are no further questions, I'll sit down for now. None from me, but Judge Clifton, any questions? We're fine. Hearing none. Thank you, Your Honors. And for planning purposes, counsel should assume we're going to give you two minutes for rebuttal argument from this point. Thank you, Judge Gold. Okay, so we'll proceed with the arguments by the appellees. Thank you, Judge Gould, and may it please the court. My name is Andrew Missal. I represent the Plaintiffs Appellees Western Watersheds Project and Center for Biological Diversity. And I'd like to begin, if I may, by exploring sort of the logical conundrum that Judge Miller brought up. Judge Miller asked opposing counsel what would happen if they were allowed to intervene. And I believe the response was that they would get to go back and there would be a new round of briefing and there would be maybe you go back to the district court and there'd be a new round of briefing. It's not clear what they would say in that new round of briefing, because all of the arguments that they supposedly want to make are premised on their absence. That's even more true for their intervention that they're seeking in phases two and three. As opposing counsel mentioned, the different sets of lease sales have been broken up into three or maybe even four phases and are being litigated in phases below. It's not clear what would happen if they successfully intervened for phases two and three. The arguments that they want to make would disappear. And what arguments would they be left with? Well, let me start with the appeal. And I confess, I don't recall having faced a situation we're posed with here where a merits appeal that has already been argued and I presume submitted to a different panel is now the subject of our possibility of this panel being asked to pull the plug. I'm not sure how that plays out or even if we have the authority to do that. But let's assume for a moment that we do. I take it the argument that interests would say that would need to be made or could be made and they would hope it would be made successfully is that the district court couldn't do what it did to cancel at least this particular set of leases without the participation of this particular set of lease holder. And so that piece would have to be sent back to the district court to go over again. Now, it is true, and this is the conundrum that we've identified. Once they're in the case, Andrews doesn't have that argument to make. But presumably, it would be able to be heard on whatever it had to say with regards to that remedy, perhaps not the violation itself. That part I haven't really worked through in my own head yet. It's about as bad as me trying to figure out what we do with our other panel. This case raises complications. But I take it that at a minimum, they would want to be able to argue whatever they have to say with regard to the remedy, which the district court has imposed. So isn't that a piece that if we could do something about the merits appeal might produce a different path from here on? I don't think so, Your Honor, for a couple of reasons. One, the alliance and the federal government and Wyoming, which is also an intervener, successfully obtained a stay pending appeal. So the district court's order vacating the lease sales is not in effect right now. So I think what would happen is, at best, they would be able to argue that, well, the district court shouldn't have done what it did, but it's being stayed pending appeal anyway. And at best, what they would get is to go back down. And then I'm not sure what arguments they would make, because all of the arguments that don't have to do with their absence, that have to do with the propriety of vacature as a remedy for a APA violation, the allied signal test, those arguments were all made strenuously by the alliance, by the state of Wyoming, which does not want these leases to be canceled either. And they would essentially just make exactly the same arguments if they went back down. So what's the problem from your perspective if they have no new arguments to make and the same result is reached? The whole thing gets stretched out, but nothing seems to be happening in the meantime because of the stay. So I hear what you say. You don't ordinarily get a do over. But if the do over produces exactly the same result, what's the problem from the perspective of your client? Well, your honor, I think it's just it would introduce further delays into the resolution of the phase one appeal. It would require us to engage in possibly to engage in responding to possibly duplicative arguments. I think just sort of standard. Duplicative, you just point to your prior brief that was successful in front of the district court. I love being in that position when I've already got the court declared on my side. I just say you were right the first time, your honor. Well, perhaps, your honor, and I if I may, then I would I would turn to the the timeliness issue, because, of course, that's an independent basis on which this court can affirm. And opposing counsel has tried to break up Anschutz's motion to intervene into two parts, saying they sought intervention limited to appeal and then they sought intervention in future proceedings. But that's not how it works. That means that they sought intervention that was not limited. And opposing counsel said there was no case in which intervention had been denied on those grounds. But there is a case. It's United States versus state of Washington, where the purported intervener tried to make exactly the same argument, breaking up their intervention into an intervention and appeal and then what they call future sub proceedings. I believe opposing counsel said future proceedings, almost exactly the same language. And this court said, no, you're trying to intervene, not just for appeal. You're trying to get more than intervening for appeal. And so we're going to use what the court in that case called the traditional three factor timeliness test. So I don't think that opposing counsel can break up these two interventions, intervention for appeal of the phase one decision and intervention in future phases of the case. It was one motion to intervene, not just limited to intervention on appeal. And so the traditional three factor timely timeliness test applies. Well, there is a difference. I think there was a useful concession on the part of Anschutz that it's not trying to unscramble the egg. It recognizes that things have happened. And one of the reasons to resist intervention is that we don't want to have to undo things that have been done. Don't want to have to unscramble the egg. There may be some of that here in terms of Anschutz wanting to go back and make arguments, which it would like to make to the district court. But I don't really hold my breath for the district court reaching a different conclusion. But the future is something entirely different. It's not hard for me to understand the separation into pieces. You're certainly right that intervention is intervention. But if we're not going to go back in time and try to redo things, we're simply looking toward the future. In this case, there are two kinds of futures. One is the appeal, which could potentially point to going back to the district court and redoing things, because that's what appellate courts make trial courts do. But the other is going forward. OK, the water's under the bridge. But for future proceedings, what's the harm in letting Anschutz participate directly instead of trying to do it through its trade association? Sure. So, Your Honor, I think that it's the harms that the district court identified, which would essentially be this kind of piling-on effect, where we already have two interveners in the case. We have the Western Energy Alliance. We have the state of Wyoming. We, of course, have the federal defendants. Now we get yet another party entering the case, providing duplicative arguments, because, again, the arguments that they claim they want to make, they won't be able to make in phases two and three once they're a party. We get that all the time. We get it even more with amicus briefs, which you can get 20 all saying the same thing. But you can get interveners that way, too. Lately, I think the class action objector bar piles on with some degree of regularity. I've got lots of cases where you've got multiple parties trying to clamor and make the arguments. We deal with that. And I'm not sure that's really a disadvantage, so that you take a party whose interests are undisputed and say, well, even though at this point we could let you through the door, we're not going to. And when asked why the notion that, well, other people are saying similar things already, yeah, I hear that. We get that. Is that really a harm? Is that a reason for saying this party can't participate? I'm posing that as a question, as a devil's advocate type thing. But I really am curious as to what's the disadvantage if we're only looking forward? We're not trying to unscramble an egg. If we're only looking forward, what's the disadvantage of letting them step forward? So, Your Honor, I think on that point, I would say that the district courts, that the prejudice factor is only one of the three factors in the timeliness analysis. And I think the other two factors in the timeliness analysis weigh so heavily against Anschutz that even only a minor showing of prejudice does not mean the district court abused its discretion in denying intervention on timeliness grounds. Anschutz, this case began in April 2018. Anschutz's Phase 2 leases were challenged in the complaint. Plaintiffs asked to vacate the lease sales at which those leases were bought. Summary judgment briefing in Phase 1 happened during 2019. And I would point out the notion that the remedy is extreme or wild, it wasn't so wild because the briefing in the Phase 1 summary judgment included a lot of back and forth between the Western Energy Alliance, plaintiffs, the state of Wyoming, and BLM about the propriety of vacature. Lots of digital ink was spilled talking about propriety of vacature. I would also point out that, you know, there is another case at which a district court vacated leases. It's the next case you're hearing. There's also another case where an appeal from the dial of intervention in our same case by Chesapeake. So it's not quite as unprecedented as I think it's made out to be. And it, of course, is the remedy that we were seeking the entire case. But it is rather unusual, isn't it, for the lease to be vacated without the participation of the leaseholder whose property interest is going to be taken away, isn't it? Well, Your Honor, I don't have statistics for you. I can tell you that in a lot of cases, like, for instance, Connor v. Burford, there was no participation of a trade alliance. There was no equivalent of the Western Energy Alliance in that case, which is, you know, I think part of the reason this court was so concerned about reforming the remedy. And this is something that we talk about a lot in our briefs. But the Western Energy Alliance did not intervene primarily to defend its organizational interests. It intervened for the express purpose of defending its members' interests. The district court summarized this in its intervention orders. That's at one excerpt of record, 9, 10, and 30 through 31. The district court, in excruciating detail, went through all the places in the intervention motion and reply, and I think even in the summary judgment briefing, where the alliance said, we are here to defend our members' interests. And I think the most— But even so, I mean, if we think that the law is that as a matter of due process, that the leaseholder has—you can't vacate the lease without the leaseholder being a party, why wasn't it reasonable for Anschutz to, you know, being aware of that legal principle, you know, look at this case and say, okay, you know, we're good here. We're not a party, so I guess they can't take away our lease. Why wasn't that a reasonable way for them to proceed? Well, Your Honor, I dispute that that premise is correct in two different ways. One, under Taylor v. Sturgill, you can have—you can be bound by a judgment not—in a case to which you are not a party. But more importantly, and this is something that the Anschutz plays around with in its briefs, they keep saying that the district court canceled the leases. The district court did not cancel the leases. Lease cancellation is something that happens, that BLM does. What the district court did was vacate the final agency actions, rendering the leases void or at least voidable. Then BLM has to take an additional step to vacate—sorry, to cancel the leases. We cited a case in our answering brief, Solon X LLC v. Bernhardt, a D.C. Circuit case, where BLM canceled the lease because it decided that it hadn't done the right VIPA analysis beforehand. And then the company sued BLM in court under the APA, saying, you know, you can't cancel our lease because it's arbitrary and capricious. Now, what happened in this case, if the stay were lifted and BLM proceeded to cancel the leases, then in a future case, the question will come up, is Anschutz bound by the District of Idaho's, in a collateral estoppel issue preclusion sense, bound by the district court's determination that the leases were improperly issued under NEPA and the APA? That's a question for a future case. And so they keep assuming that that's true, and so therefore their due process rights are violated. But that's not what actually happened. It's not what the district court did. Is there any option for land management here to say, well, we're not going to pay any attention to what the district court, not on a Pacific island in this case, but someplace out west on a mountain, decided, I mean, I don't see this as a discretionary decision if based on what the district court here ruled, isn't it kind of automatic that those leases can't stay in place? And if so, why are we saying that there's still another? I mean, this case is complicated enough. I don't want to have to think about collateral estoppel law. But why don't we just recognize what the implications of this decision are? Sure. And I guess that would get to my second point, which is that the representation that the alliance is providing in this case is not just adequate. They've been working hand in glove with Anschutz. And I think the single most important thing is the stay motion. So this happened, and I see my time is out. If I may be permitted to just finish this one thought here. Go ahead and complete your answer. And I have a question. Yes, your honor. This is the stay motion. So the idea that as soon as the phase one decision happened, all of a sudden the representation became inadequate is somewhat belied by the fact that a month later, the alliance sought a stay from the district court and obtained a stay from the district court, citing irreparable harm to its members and including a declaration from Mr. Dominic, the president of Anschutz, saying we will be irreparably harmed absent a stay. So this was a month after supposedly Anschutz decided that it was no longer being adequately represented. It's now working hand in glove with the alliance to protect its interest. So that, I think, is further proof that the alliance is acting in a representative capacity such that there is not a due process. Okay. So I have a question for you. If I may, and I'll apologize if it just shows I have too big a blank in understanding. But my question is this. Why isn't it in the best interest of the Western Watersheds Project to permit Anschutz to intervene for purposes of the appeal? Because absent that participation in the appeal, presumably under Rule 19, they're not going to be bound by whatever is done. So, Your Honor, I think that it's mostly a practical concern with maybe not, either in this case or in future cases, challenging. I mean, as we are, this case is ongoing. There might be future cases challenging large lease sales with large number of leaseholders. If all of those leaseholders are allowed to intervene in every case, it becomes just practically very difficult to litigate those cases. I think that's the main concern. And I think there's also, in this particular case, there's also just the delay issue. There's just the fact that this case had been going on for two years with the Trade Association vigorously advocating against lease vacature. And that then when they got an unfavorable decision, Anschutz and a couple of other oil and gas companies tried to jump in. And I think that that sort of, you know, for lack of a better term, sandbagging is something that we felt was prejudicial. Is the appeal on phase one, is that all completed in terms up to the point of argument but no decision? Yes, it was argued last month and submitted to a different panel. And phase two has been completely briefed and argued in the district court. And I believe we're expecting a decision this month because Magistrate Judge Bush is retiring at the end of June and has indicated that he's going to try to get this case out. And phase three is in the middle of briefing. So then how could Anschutz, still having trouble understanding, how could Anschutz be held to be bound by the initial decision if they're not a party to the case? Sure. So, and again, I think the question of whether they'd be bound in a collateral estoppel sense is a question for a future case and not totally representative, not totally determinative of the adequate representation inquiry. But I would say it's under the Taylor versus Sturgill exception. Taylor versus Sturgill recognized the exception for, there's like six exceptions essentially to the general rule cited by Anschutz. And one of those is when you're so adequately represented by an existing party that you essentially had an opportunity to litigate the issues. And we did discuss this in our answering brief, albeit somewhat briefly. Okay. Thank you. Does that conclude your argument? Yes, Your Honor. Thank you. We would ask you to affirm the district court on either of the bases that it relied on. Okay. Thank you very much. Now we'll hear again from the appellant for two minutes of rebuttal. Thank you, Judge Gould. Just a couple quick points about some aspects of Mr. Missel's argument and then a couple observations about what Mr. Missel did not say. The first is just a factual correction. You know, Mr. Missel argued and mentions in his briefing that these leases were not actually canceled. There were something short of canceled. That is not what the government said in its briefing and the underlying appeal. Ten times it described the leases as being canceled. And even Mr. Missel in his brief at page 32 admits that, quote, as a matter of real-world consequences, it's true that the district court's decision will affect AEC's property rights. So whether you call it canceled or extinguished or some synonym, it's the same. The second point has to do with logic. Mr. Missel said that our arguments are premised on our absence from the case. That's exactly the point. The remedy that was ordered here could not be ordered in our absence. So the logical conundrum, I think, is actually what would be produced if this court affirmed that ruling, which is that you would have a circumstance where Anschutz does not get to intervene, even though its interests are impacted, in fact, extinguished, just because there is a circumstance in which if we were allowed to intervene, we could go back and make different arguments and perhaps reach the same result. That's called due process, and that's what we were denied the first time around. Third point on timeliness. Mr. Missel mentioned U.S. v. Washington. I would commend that case to you because what the interveners in Washington were doing was something that was much broader than what Anschutz was seeking to do here. Anschutz was seeking, number one, to appeal. That's order number one that issued. And number two, to participate in future proceedings, phases two and three. I would commend U.S. v. Washington at page 1505 to you for a comparison. Then quickly, the two things that Mr. Missel didn't say. He had no answer to our point that it is the plaintiff's responsibility in the first instance to ensure that if they are seeking relief under Rule 19 against parties that hold property, that those parties are made parties to the case. They have every interest, of course, in not doing that in a case that is as sprawling as this case that they formulated. That's what Mr. Missel called the practical problems and what I would call the jurisdictional problems. But that's Mr. Missel's responsibility and his client's responsibility in the first instance, the court's responsibility after that, and both of those responsibilities, unfortunately, were advocated here. Second and final point about what Mr. Missel did not say is that he did not contest that there is no case in which an industry group has been found to adequately represent a party whose property rights have been extinguished by a court in a circumstance like this involving a lease or a permit or other such property right. That's because there is no such case. If there are no further questions. Dearing none here, we thank both counsel for their excellent advocacy, and the Western Watersheds case shall now be submitted and the parties will hear from the panel in due course. Thank you again.
judges: Gould, Clifton, Miller